UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CATHY LYNN SINGLETON,

      Plaintiff,

v.                               CASE No.  8:11-CV-1680-T-TGW

MICHAEL ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of her claim for Social Security disability benefits.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, the decision will be affirmed.

## I.

The plaintiff, who was fifty-two years old at the time of the administrative hearing and who has a high school education, has worked primarily as a phlebotomist (Tr. 29, 49, 165). She filed a claim for Social

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

Security disability benefits, alleging that she became disabled due to coronary artery disease, depression, anxiety, back and neck pain, numbness in the right hand, headaches, chest pain with stent placement, high blood pressure, diabetes, thyroid disease, and cholesterol problems (Tr. 160). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of coronary artery disease, hypertension, diabetes, hypothyroidism, anxiety, and depression (Tr. 13). She concluded that, with these impairments, the plaintiff "has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b), except she is limited to unskilled work that she can perform at her own pace and where contact with coworkers and supervisors is infrequent and supervision is indirect" (Tr. 15). The law judge decided that these limitations prevented the plaintiff from returning to her past relevant work (Tr. 19). However, based upon the testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as photo copy machine operator, remnant

sorter, and night cleaner (Tr. 20).   The law judge therefore ruled that the plaintiff was not disabled (Tr. 21).   The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. 423(d)(1)(A).   A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305

U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper

-4-

legal standards were applied and legal requirements were met. <u>Lamb</u> v.
<u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the law judge's decision on three
grounds. The plaintiff argues first that the law judge's residual functional
capacity finding is not supported by substantial evidence. Next, the plaintiff
asserts that the law judge failed to give proper weight to the medical opinions
of record. Finally, the plaintiff contends that the law judge improperly
dismissed her subjective complaints of pain. None of these assertions has
merit.

The plaintiff complains that the law judge's residual functional
capacity finding failed to include limitations from the numbness in her hands
and pain in her arms (Doc. 21, pp. 8-10). In this regard, the plaintiff argues
that "there is ample support for [her] complaints of numbness and pain in her
arms and hands, particularly since her treatment with her own physicians
supports her diagnoses of fibromyalgia and the consultative examiner [Dr. R.
Salari] found evidence of the possibility of cervical disc issues, both of which
would impact her hands" (<u>id.</u>, p. 10).

In order to prevail, however, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005); McCruter v. Bowen, supra. Here, the plaintiff makes no effort to show how her hand numbness and arm pain create a specific functional limitation beyond the law judge's residual functional capacity finding.

As indicated, the plaintiff attempts to support her argument by pointing to the opinion of Dr. R. Salari, a consultative examiner. On April 18, 2008, Dr. Salari stated that the plaintiff's "[r]ight hand numbness could be due to cervical disk herniation," and "[t]here is absence of bilateral biceps reflexes" (Tr. 283). Dr. Salari's back and spine examination revealed "[d]iffuse tenderness ... from the neck to the lumbar area with multiple trigger points present" (id.). His impression included possible fibromyalgia (id.).

-6-

The plaintiff's reliance on Dr. Salari's report is unavailing. First, the plaintiff fails to mention that Dr. Salari's musculoskeletal examination revealed that the plaintiff could grip 30 pounds with her right hand and 35 pounds with her left hand; her handgrip strength was 4/5; the fine movements of her hands were intact; and she could pick up objects, open doors, and button a shirt (Tr. 282). Dr. Salari also noted that the plaintiff has full range of motion in the cervical and lumbar areas (Tr. 283). Moreover, as the Commissioner points out (Doc. 22, p. 6), Dr. Salari did not impose any functional limitations resulting from the plaintiff's hand numbness and arm pain (and neither did any other doctor).

In any event, the law judge's residual functional capacity is supported by the substantial evidence of record. For example, as the law judge noted, "[i]n May 2009, the claimant complained of pain in her arm and numbness in her fingers (Exhibit 13F, p. 1), but an examination performed after only a few days no longer addresses this complaint (Exhibit 13F, p. 2)" (Tr. 17-18). Significantly, in May 2009, the plaintiff associated her complaints of back pain, arm pain, and some numbness with exercise, as well as moving furniture (Tr. 398, 399). Further, three nonexamining reviewing

physicians found that the plaintiff had no manipulative limitations (Tr. 287, 354, 425). Thus, in light of the medical evidence of record, the law judge's residual functional capacity finding, and her implicit determination that the plaintiff's arm pain and hand numbness did not constitute severe impairments, were reasonable.

In a related argument, the plaintiff suggests that the law judge's hypothetical question to the vocational expert was not complete because it failed to include limitations from her hand numbness and arm pain (Doc. 21, pp. 9-10). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). However, the administrative law judge is not required to include restrictions in the hypothetical question that she properly finds are unsupported. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

As previously discussed, the law judge did not find that the plaintiff had severe impairments of arm pain and hand numbness. Furthermore, the vocational profile found by the law judge clearly matches

the pertinent hypothetical question posed to the vocational expert (compare Tr. 15 with Tr. 50-51). Consequently, the hypothetical question is not flawed.

The plaintiff next argues that the law judge erred in failing to give proper weight to the medical opinions of record (Doc. 21, pp. 10-12). Significantly, there are no opinions in the record from any treating physician. Accordingly, the plaintiff is limited to challenging Dr. Salari's residual functional capacity assessment of sedentary to light work, which she calls "somewhat confusing." The plaintiff also asserts that the law judge's conclusion that the medical evidence reveals "normal musculoskeletal examinations" is contrary to the plaintiff's diagnoses of fibromyalgia and diabetic neuropathy.

The plaintiff contends that "it is not at all clear what Dr. Salari meant" by sedentary to light, and, therefore, the law judge had a duty to contact Dr. Salari for clarification (id., p. 11). In the first place, even if Dr. Salari's assessment were less than clear, the law judge had no duty under the regulations to contact him. The regulations provide that, when a consultative examiner's report is inadequate or incomplete, the Commissioner "will contact the medical source who performed the consultative examination, give

an explanation of [the] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. 404.1519p(b). However, although a complete consultative examination ordinarily includes "a medical source statement about what [the claimant] can still do despite [her] impairment(s), the absence of such a statement in a consultative examination report will not make the report incomplete." 20 C.F.R. 404.1519n(c)(6). Therefore, as the Commissioner correctly notes, "because a functional capacity opinion is not necessary for a complete consultative examiner report, the ALJ had no duty to recontact Dr. Salari for clarification of his functional capacity opinion" (Doc. 22, p. 10).

Moreover, Dr. Salari's assessment of sedentary to light work plainly means that the plaintiff can perform tasks at the exertional levels of both light and sedentary work. In other words, the plaintiff had the capability to stand/walk for six hours in an eight-hour day and to lift/carry twenty pounds occasionally and ten pounds frequently, which are the exertional requirements for light work, and could also perform the lesser demands of sedentary work. As the Commissioner points out, this is consistent with the definition of light work in the regulations, which provide that, if an individual

-10-

can do light work, she ordinarily can also do sedentary work. 20 C.F.R. 404.1567(b). The conclusion that Dr. Salari was indicating that the plaintiff could do both light and sedentary work is not changed by the law judge's stray remark at the hearing. Notably, at least by the time of the decision, the law judge recognized that Dr. Salari was opining that the plaintiff could perform both light and sedentary work in light of her statement that Dr. Salari's opinion "is consistent with the residual functional capacity set forth in this decision" (Tr. 18).

Contrary to the plaintiff's assertion, the law judge correctly found that the plaintiff's treatment records show normal musculoskeletal examinations. Indeed, extremities and musculoskeletal examinations performed at Jay Care Medical Center routinely resulted in normal findings (see e.g., Tr. 299-310). Further, when the plaintiff went to a hospital emergency room complaining of chest pain, the report stated that "[a]ll other systems are reviewed and are negative" (Tr. 391).

As indicated, the plaintiff contends that her diagnosis of fibromyalgia undermines the law judge's finding of normal musculoskeletal examinations (Doc. 21, p. 12). This contention is baseless.

The law judge expressly found that "the record in its entirety does not support" a finding of fibromyalgia (Tr. 18). The evidence clearly does not compel a contrary finding. See Adefemi v. Ashcroft, supra.

Dr. Salari merely stated an impression of "possible fibromyalgia" (Tr. 283). As the Commissioner explains, fibromyalgia is diagnosed, ordinarily by a rheumatologist, which Dr. Salari (a pulmonologist) is not, by response to at least 11 of 18 trigger points (Doc. 22, p. 11 n. 7). Dr. Salari simply noted "multiple trigger points present" without reporting the minimum number needed for a diagnosis (Tr. 283). Consequently, the law judge could reasonably discount Dr. Salari's impression of "possible fibromyalgia" as not adequately established and too equivocal.

As the law judge noted (Tr. 18), the plaintiff in May 2009 went to Jay Care Medical Center, her primary care provider, with unrelated problems, and the doctor's assessment included fibromyalgia (Tr. 405). There were no objective findings stated at all for that assessment. Moreover, the plaintiff returned three days later and there was no such assessment (Tr. 406).

Under these circumstances, the law judge could reasonably conclude that the evidence does not support a finding of fibromyalgia.

Furthermore, the law judge found "that even with a diagnosis of fibromyalgia, based on the entire evidence of record, the claimant should be capable of performing work within the above residual functional capacity" (Tr. 18). This finding is reasonable and supported by substantial evidence. Thus, while Dr. Salari gave an impression of "possible fibromyalgia," he opined further that the plaintiff "is able to perform sedentary to light work" (Tr. 283). In other words, Dr. Salari indicated that, even if the plaintiff had fibromyalgia, she nevertheless could do light work, which is the exertional level the law judge found the plaintiff could perform.

As noted, there was also an isolated (and unsubstantiated) assessment of fibromyalgia from the plaintiff's primary care providers. However, those providers provided no opinion setting forth functional limitations from fibromyalgia.

Therefore, the law judge could reasonably conclude that, even if the plaintiff had fibromyalgia, she could perform work within the law judge's residual functional capacity determination.

The plaintiff also makes reference to a diagnosis of diabetic neuropathy (Doc. 21, p. 12). However, the law judge found that the plaintiff's diabetes constituted a severe impairment, and she limited the plaintiff to light work that the plaintiff can perform at her own pace (Tr. 13, 15). The plaintiff fails to demonstrate how, if at all, her diabetic neuropathy created any functional limitations beyond the law judge's residual functional capacity during the relevant period. See Moore v. Barnhart, supra, 405 F.3d at 1213 n. 6; McCruter v. Bowen, supra. Thus, the plaintiff does not even identify any additional functional limitations claimed to be caused by diabetic neuropathy, much less cite to medical evidence establishing such limitations, as required by the scheduling Order (see Doc. 14, p. 2).

In her final issue, the plaintiff asserts that "[t]here is no substantial basis for dismissing the claimant's complaints of pain and fatigue" (Doc. 21, pp. 12-14). This contention lacks merit.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required

-14-

evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge in this case applied the Eleventh Circuit pain standard in evaluating the plaintiff's subjective complaints. The law judge referred to the pertinent regulations and Social Security rulings governing the assessment of subjective complaints (Tr. 15). She also set forth the controlling principles (Tr. 16). This demonstrates that the law judge employed the proper standards. See Wilson v. Barnhart, supra, 284 F.3d at 1225-26.

-15-

In her credibility determination, the law judge gave a cogent explanation for declining to credit fully the plaintiff's complaints of pain. Specifically, the law judge stated (Tr. 16):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

After discussing the medical evidence of record, the law judge further explained (Tr. 19):

> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. She reported that she takes care of her son, has no personal care problems, she can prepare simple meals, perform some household chores, drive a car and go shopping (Exhibit 4E, p. 1-4; Exhibit 2F, p. 1). The claimant's friend states in a Third Party Function Report that the claimant has a son and "several grandkids she tries to care for" (Exhibit 5E, p. 2). The fact that claimant is apparently able to care for young children at home, which can be quite demanding both physically and emotionally, without any particular assistance, indicates a retained level of functioning which is at least consistent with the above RFC.

-16-

> The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The record reveals relatively infrequent trips to the doctor for the allegedly disabling symptoms. Although the claimant has received some treatment for the allegedly disabling impairments, it has been essentially routine and conservative in nature. The claimant testified that her health insurance plan was terminated in 2008, which can account for some of the gaps in treatment. Nevertheless, the undersigned notes that the record does not reflect that the claimant pursued any other avenues available to her even in this unfortunate situation, especially given her allegations of disabling symptoms.

The circumstances articulated by the law judge are sufficient to support rejection of the plaintiff's complaints of totally disabling pain. See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006).

In a cursory manner, the plaintiff suggests that the law judge failed to consider the plaintiff's work history in assessing her credibility. (Doc. 21, p. 13). In this regard, the plaintiff states that she "left a job that she specifically trained for, and which she enjoyed, because she was unable to perform the work, even after she reduced her hours to part-time" (id.). However, the plaintiff has not cited any authority suggesting that the law

judge is required to discuss the plaintiff's work history in the context of a credibility determination. The regulation in that context mentions "prior work record" only in passing and did not include it in the list of specified factors. 20 C.F.R. 404.1529(c)(3). Consequently, the law judge's credibility determination is not deficient because she did not discuss the plaintiff's work record in the course of that determination.

The plaintiff also challenges the law judge's consideration of the plaintiff's activities. This contention is unavailing. In her decision, the law judge noted that the plaintiff "takes care of her son, has no personal care problems, she can prepare simple meals, perform some household chores, drive a car and go shopping" (Tr. 19). The law judge further pointed out that the plaintiff "is apparently able to care for young children at home ... without any particular assistance" (id.). The records also reflect other activities that are inconsistent with total disability, such as exercising and moving furniture (Tr. 175, 398, 399). In addition, Dr. N. Kirmani stated that the plaintiff can go to the store by herself; perform household chores such as washing dishes, picking up things, and vacuuming; watch television; read books, including the Bible; visit with family; participate in church activities; and care for her

personal grooming (Tr. 264-65). Thus, the plaintiff's activities support the law judge's determination that the plaintiff's allegations are not fully credible. See 20 C.F.R. 404.1529(c)(3); Moore v. Barnhart, supra, 405 F.3d at 1212 (upholding a credibility determination where the law judge "relied on the inconsistencies between [the plaintiff's] descriptions of her diverse daily activities and her claims of infirmity").

Finally, the plaintiff faults the law judge for considering her failure to seek medical treatment, asserting that she is unable to afford treatment because her insurance plan was terminated (Doc. 21, p. 14). However, the law judge expressly recognized this circumstance (Tr. 19), but pointed out that, when the plaintiff was insured, her treatment was "essentially routine and conservative in nature" (id.). The law judge reasonably noted further that there is no indication in the record of the plaintiff pursuing other avenues of medical treatment despite her alleged disabling symptoms. The record also shows that the plaintiff was expending resources on cable TV, computer service, and both a land line and a cell phone (Tr. 264), instead of spending at least some of those funds on what are claimed to be disabling symptoms.

In all events, whatever the reason for limited medical treatment, the result is that the medical evidence in this case is sparse. That circumstance substantially hampers the plaintiff in carrying her burden to show that she is disabled.

In sum, the law judge properly applied the Eleventh Circuit pain standard and, based on that standard, made a reasonable and adequately explained decision to decline to credit fully the plaintiff's subjective complaints. Of course, the law judge did accept the plaintiff's testimony to the extent that it indicated that the plaintiff was limited to light work with some additional restrictions.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby AFFIRMED. The Clerk shall enter judgment accordingly and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this ___6th___ day of November, 2012.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE